Thank you, Judge. Good afternoon to the court. My name is Lauren Cusatello. I'm proud to represent Mr. Fernandez-Mejia, the petitioner in this matter, and I would ask to reserve three minutes for rebuttal. Felix Fernandez-Mejia was denied the opportunity to apply for asylum and withholding of removal by the immigration judge in this case based on the incorrect legal conclusion that he had been convicted of a per se aggravated felony crime of violence over 25 years earlier. That decades-old conviction from the state of Wyoming for attempted voluntary manslaughter has been in dispute for years now in these proceedings, and both the immigration judge and the Board of Immigration Appeals ruled that although everyone agrees that offense does not include an element that requires the use or attempted use of force. In the words of the IJ and the board, that it includes an implied element of force. Now, the court suggests, the IJ's opinion rested on the premise and then the board accepted that premise that this offense under Wyoming law includes an element that the defendant intends to kill the person who is the victim of the offense. But Wyoming state law makes it clear that the IJ was wrong about that from second-degree murder in terms of its elements under Wyoming law and in Riley and Bloomfield, the Wyoming Supreme Court explicitly held that intent to kill is not an element of either second-degree murder or voluntary manslaughter. And yet, because this is an attempt offense, the IJ found and the BIA accepted the IJ's reasoning that that must elevate the intent required to include intent to kill. Again, this issue was contemplated in Riley and in Bloomfield and the Wyoming cases. That finding was based on an analysis of California law and this court is bound by Wyoming's interpretation of its own law. Counsel, I'm going to stop you for a minute. I think I'm going to have to get off and get back on. All right. I apologize. Zoom is unable to detect my camera when it's been detecting it for the past year. So I just going to, I think maybe if I just reboot myself back on and back off, I'll be okay. All right. So I'm going to leave and then I'll come back on. Sounds great. Okay, great. I'm sorry. Did you just repeat that last point? Certainly Judge Wardlaw. This court is bound by Wyoming's interpretation of its own laws. And because the Wyoming Supreme Court has repeatedly held that both its second-degree murder and voluntary manslaughter statute do not require an intent to kill, that this court is interpretation of a parallel criminal statute, which itself contradicts this court's rulings, is not persuasive or binding in this case, in light of those decisions. And because intent to kill is not an element, the entire premise on which the agency's reasoning in this case is based, that the whole line of reasoning falls. There really is no basis for the finding that without an intent to kill, that taking a substantial step toward an action that is capable of killing another person is itself requires the use of force. And we illustrated multiple examples of person can cause the death of another person without engaging in conduct that would constitute the use of force, focusing on three primary categories. The first being aiding and abetting suicide, essentially, where there's never any unwanted touching or battery or any force. Aren't those outliers? I mean, we're also admonished to sort of not be focused on the fact that occasionally there may be an outlier. And, you know, sort of inducing someone to commit suicide, and that's sort of a new phenomenon. But, you know, the fact that you can identify one or two out-of-state cases that have highly unusual fact patterns, does that answer the question in terms of the categorical approach? It's a great question, Judge Pegerson. And the answer breaks down into a couple of parts. The first is, what does the plain text of this statute allow, which is any killing of another person? And the government's position is that it is not possible to kill another person without using force. And we use out-of-state cases not to cite the legal principles necessarily of those states' crimes, but to show that it has been found sufficient that those defendants caused those deaths and could be prosecuted for manslaughter in those cases. And given that the text… Doesn't that really mean, depend on how you define use of force? You know, you can, focusing on the use component, you can arguably use force when you tell someone else by overcoming their will to do something. They are the ones that are pulling the trigger, but you're the one that is essentially guiding the pulling of that trigger. Isn't that a use of force? If the goal was essentially to commit a homicide without being the one pulling the trigger, that argument is possible. But not all suicides involve force. Ultimately, as we discussed in the briefing, this does boil down to the question of whether there's any nonviolent way to die. Because if… Counsel, let me ask you a question on that. And I do have a case in mind. But my question is, is it attempted manslaughter, voluntary attempted manslaughter, if somebody tried to put like radioactive material in the home of another person to give them poisoning from that? Or if they had access to like a Russian or military nerve agent, and they were going to try to dust the person with a toxic nerve agent to kill them, but they picked out the wrong bottle and ended up not killing them, sort of dusting them with talcum powder or something? I… It's a complicated question to answer. I understand what you're asking, Judge Gould. Certainly, if the intent is to kill, something like that could be attempted murder. Whether attempted poisoning or the other examples that you cited could be attempted manslaughter under the right set of facts, I think the answer is yes. And in that, the suicide, the actual aiding and abetting suicide or encouraging suicide case out of Massachusetts, Commonwealth versus Carter, was suicide by carbon monoxide poisoning. So certainly, in that case, the prosecution was based on a death that was caused by voluntary poisoning of oneself, of the victim in the case. And I think that gets back to Judge Pregerson's question, what does it mean to use force? And when we're looking at an attempt to commit a predicate offense, which is not how this was framed, this was framed as the attempt itself is the crime of violence, that not that completed manslaughter is successful or acts that do result in death, but that the attempted offense is the crime of violence. That is where the question of the required intent becomes most relevant. If a person takes a substantial step towards doing something that could cause another person's death, all that is required under Wyoming law, under the cases I mentioned previously, is that they intend to do that act and that they have the mens rea required for the completed offense, which is just knowingly doing the act, not with the intent to commit a particular desired result. That is what distinguishes attempted suicide, for example. Encouraging suicide while not actually intending that the person complete the act, but, for example, making statements that a finder of fact finds that did convince a person to commit suicide, I believe could be charged whether that person used what we would all agree is force or whether that person died by poisoning or some form of chemical death. That is also similar to the prosecutions under a failure to protect or failure to ameliorate harm theory of prosecution, such as the failure to seek care for someone who had themselves overdosed on a controlled substance or the cases based on religious or other failure to seek medical treatment for someone in one's care, like a parent seeking medical treatment for a child. Again, those things can cause a person's death even if one does not intend it. This really does force us to consider what is the definition of attempt under Wyoming law and whether the completed offense also would constitute a crime of violence. I see that I'm running low on time. I would just like to say before I get to the end that everyone agrees there's no criminal bar to relief under the convention against torture, to deferral of removal, and there were a number of legal errors and factual errors committed by the immigration judge and affirmed by the Board of Immigration Appeals with respect to essentially all of the preliminary findings that were considered and in total to reach the conclusion that torture was not likely in this case. I will stop now and reserve my time. I thank the court for your questions. Thank you, counsel. Ms. Nahas? Good afternoon, your honors. May it please the Attorney General. I'd like to begin by clarifying the agency's conclusion that attempted voluntary manslaughter under Wyoming law constitutes a crime of violence. The agency properly made that conclusion. In the analysis for a crime of violence, as you compare the state's elements to the generic elements of crime of violence, and there's essentially two elements for a crime of There's a mens rea requirement that the conduct be intentional or knowing, and there's also an actus reus requirement. And I'll start with the mens rea requirement. Whether you look at the attempted statute or if whether you look at the voluntary manslaughter statute under Wyoming law, you have intentional conduct within the meaning of crime of violence under lea call. The voluntary manslaughter in Wyoming requires that the offender act with committed killing through the voluntarily upon a sudden heat of passion. And the Wyoming courts have interpreted that element as requiring intentional conduct. So that's the substantive offense. We have intentional conduct as it's been interpreted by the Wyoming courts. Explain the difference then between intentional conduct, I intended to pull the trigger versus I intended to commit a homicide. Sure, your honor. So this is essentially a general intent crime where the person has to intend the acts that result in the death. They don't need to intend to kill. They need to intend the acts that ultimately result in the death. And this crimes that require intentional or not knowing conduct meet the definition of a crime of violence use of a physical force under the Supreme Court's precedent in lea call. So that's the substantive offense. So that means I intended to pull the trigger. That's sufficient. We don't get into I intended to harm this other person. Correct. But that's that conduct is still intentional. Leah call was the Supreme Court's decision that discussed sort of the mens rea requirement of a crime of violence. And in that case, it was a DUI offense, which resulted in physical injury. And the Supreme Court said that that statute could not satisfy the crime of violence definition because it didn't have the active employment of force. There was nothing active about negligent, negligently causing physical injury through a DUI. That statute covered negligence. And that is why accidental conduct, which is why it fell outside. What about the Wyoming Supreme Court saying that we're only looking at the intent to pull the trigger, not the intent to harm a human being? That goes to, you know, this is a general intent crime. The government conceives that. This is a crime where you don't need to intend the ultimate result. But that's a red herring. You don't need specific intent to qualify as a crime of violence under the Supreme Court's precedent. All you need is intentional or knowing conduct. And we have that here. Whether you look at the offense, which requires intentional conduct, albeit not specific intent, or if you look at the attempt statute, which also requires intentional conduct. So however you slice it, there's intentional conduct. And that's all that matters. And this court has found that general intent crimes like this one, where the person doesn't need to have a specific intent to commit the ultimate act, the court has found that that was sufficient in Grajeda and in World. And I want to turn to the second element of crime of violence, which is the actus reus, that there needs to be use of violent physical force under the Supreme Court's decision in Johnson. And again, the statute satisfies that whether you look at the attempted version or the element, either causing someone's death or attempting to cause someone's death. And under Castleman, a Supreme Court decision, you cannot cause someone physical injury without force. The idea is that if a statute includes the causation of physical injury, then it necessarily includes an element of force because it's impossible to cause injury without force. Right. And so of course, death is the ultimate type of physical injury. So it certainly is preceded by physical force. And I want to point out that this court, there's a long line of cases that have applied this Castleman type of reasoning, that if the statute requires causing physical injury or death, it necessarily includes use of violent physical force under Johnson. And I've cited a number of those cases, Melchor, Masseno, Arellano, Hernandez, Wuerl. And petitioners claim that those line of cases are limited to threats. That's absolutely not the case. The court has said, apply this line of reasoning in the assault context. And Calvillo, Palacios, it looked at an aggravated assault statute that required the causation of physical injury. And the petitioner raised the same argument that petitioner is raising in this case, that because the statute did include an express element of, quote, use of physical force, it fell outside of the definition of crime and violence. But the court rejected that and said, of course, it doesn't, you don't need an express element of use of force. It's inherent in the element that requires the causation of physical injury. I also want to discuss petitioner's claim that there's a realistic probability that this statute would apply to overbroad conduct. On its face, there is a categorical match because the element, as I just mentioned, of causing physical injury inherently includes the use of physical force. And so on its face, there is a categorical match. And to rebut that, the petitioner has to come forward with a case under Duenas Alvarez, where the state, actually, where the Wyoming state prosecutors actually applied this statute with its elements to conduct outside of the generic definition. And petitioner has not done that. The petitioner cites cases from other states. I think procedurally, the government would object to that type of analysis, because the categorical approach has become very convoluted and challenging. And to expect the agency and courts to engage in an analysis of how all 50 states prosecute their statutes would be an impossible task. But putting aside the procedural objections that the government has, the state statutes that petitioner relies on, all of them except one, involve reckless or negligent conduct. Our statute does not cover reckless or negligent conduct. Our statute requires, as I mentioned, intentional conduct. There is an element of committing the death voluntarily upon a sudden heat of passion. And that excludes, under Wyoming case law, accidental deaths. So there is simply, those statutes and how they're applied has no relevance here, because they involve different elements. And of course, they could capture other conduct, but that's besides the point for this statute. I also want to point out that going back to Judge Gould's hypothetical, the court has repeatedly rejected the notion that using indirect force, like poisoning someone, would be insufficient to qualify as use of physical force under Johnson's definition. And the reason is that Castleman, the Supreme Court, explained that, you know, it's not the sprinkling of the poison that involves violent physical force. It's the impact that poison has on your body that captures the violent physical force. So that notion has already been rejected repeatedly, and I cited those cases in my brief. And we don't think the court needs to reach the omission question, whether an omission is a sufficient act to qualify as use of physical force. Because Petitioner, as I mentioned, did not establish a realistic probability that this statute would reach an omission. So we really don't think that's before the court. But to the I'll just point out that six circuits have already rejected that idea, and I'm happy to supply that in 20HA if your honors are interested in it. But those circuits have relied on, again, the Castleman type of reasoning that indirect force omissions do qualify as use of physical force as long as there's the causation of physical injury or death. Do you want to address the cat claim? Yes, your honor. I want to just start off by acknowledging that Petitioner is sympathetic. He suffers from schizophrenia, and he has experienced harm in Honduras. And, you know, we're cognizant of that. I think the immigration judge noted that. But I think cat protection is really intended to capture more skin. And so, you know, severe types of claims and harm. And it's a really high burden. And we think that the record supports the agency's conclusion, starting with clear probability of future torture. The IJA properly considered three factors. The first is the past harm that Petitioner experienced. And as I mentioned, it is unfortunate he was struck with a machete on two occasions over the span of 30 years. And he did require hospitalization. And as the IJA noted, that possibly could qualify as past persecution, but doesn't rise to the level of torture. And the court's decision in AHMED supports that conclusion. Turning to the particularized risk, the Petitioner didn't establish that he specifically faces a clear probability of future torture in Honduras, where the country condition evidence, Petitioner hasn't pointed to any evidence showing that individuals like him with a mental illness or chronically homeless are at a higher risk of being harmed by criminals or gang members in Honduras. And instead, you know, in looking at his past harm, he's even admitted that he was targeted for financial reasons or criminal motives for extortion or robbery. And so, you know, it's sort of a generalized claim that he's bringing forward. He doesn't have some status that makes him more likely to be targeted in Honduras. Turning to internal relocation, the Immigration Judge properly considered the affirmative evidence in the record that Petitioner was able to reside in Copas Runas for five months without harm. And contrary to Petitioner's claim, the Immigration Judge didn't place the burden on Petitioner. The IJA admittedly did use language saying, you know, fail to show, but the IJA also said that importantly, the analysis shows that the IJA wasn't placing the burden on the Petitioner, where he looked at, the IJA looked at affirmative evidence of internal relocation rather than pointing to the absence of evidence of you didn't show that you couldn't live here safely. So with those three factors in mind, I think the Immigration Judge's conclusion that he doesn't, he didn't establish a clear probability of future torture is supported by substantial evidence. Turning to acquiescence, looking at the individualized evidence, Petitioner admitted that he was able to file three police reports and that he, the police followed up on one of the more severe incidents that he experienced. So that particularized evidence shows that the police were willing to protect him. And we, Petitioner also testified that on occasion, the police told him we don't have the manpower to protect you, but really that goes to a lack of resources and an inability to control gang violence in Honduras rather than acquiescence. So that's the individualized evidence. And then turning to the generalized evidence, there are some, there is some evidence of national efforts to combat gang violence and corruption. And of course, as the Immigration Judge noted, there's also evidence that those efforts haven't been successful in every case and that there continue to be problems with corruption. But on balance, the Immigration Judge properly found that that generalized evidence along with the particularized evidence that Petitioner was able to seek police protection is substantial evidence supporting the agency's conclusion. So unless your honors have any questions, the government submits. Thank you. I think you've used up all of your time, Ms. Nahas. Thank you. We'll turn to you. Thank you, Ms. Cusicello. Thank you, Judge Huerta. The government relies on a number of cases to suggest that the the question of whether this offense involves force has already been decided. And I'll start with Castleman. Castleman was decided in the context of defining the term misdemeanor crime of domestic violence, which is itself a term of art within the context of a criminal statute prohibiting possession of firearms by certain people. And in that context, the court first held that the phrase misdemeanor crime of domestic violence incorporates the common law definition of battery, which includes any offensive touching, which would not meet the we are looking at here, the Title 18, Section 16 definition of crime of violence. And so the holding of Castleman's the specific languages, it's impossible to cause bodily injury without applying force in the common law sense that does not answer the violent force sense. And so that's, I think, addresses that many of the cases. Yes, yes, Judge. I know this is totally irrelevant to the legal analysis because we're applying the categorical approach, but what what exactly did Mr. Fernandez do in Wyoming? I think the best way to describe why he was convicted of that offense is that it was an imperfect self-defense case. That's the best understanding I could get in the context of a 25-year-old conviction involving an incompetent and detained person. It was related to his mental illness. Right. And that issue would have been litigated that case was scheduled for an evidentiary hearing on the question if the court had not ruled that it was a per se, particularly serious crime, because Gomez Sanchez would have required her to consider his mental state at the time of the offense and the circumstances of the offense, because the current state of agency law is that the court does not have to make a separate finding of current dangerousness regardless of the age of the offense. Although that that that principle is contrary to human rights, while that is the state of our law that we're stuck with. And so I hope that answers your question with my remaining time. I will just say most of the cases cited by the government that they claim answer these questions really arise in the sentencing guidelines context, which again includes a different definition of these terms. And I rest by saying that the for the forms of protection that he sought. And we ask that the case be remanded to the agency to reconsider in light of a correct view of these these legal issues. Thank you very much to the court. Thank you very much. Both counsel did a great job. Fernandez Mejia versus Wilkinson will be submitted and we will take up Iglesias Iglesias versus Wilkinson.
judges: Wardlaw, Gould, Pregerson